25 C.C.P.A. (Patents)

### HAUGH v. STOLP et al.

### Patent Appeal No. 3925.

Court of Customs and Patent Appeals.

June 27, 1938.

Clifton V. Edwards and George Gordon Hyde, both of New York City (John B. Brady, of Washington, D. C., and D. Gordon Angus, of New York City, of counsel), for appellant.

Elmer Stewart, of Washington, D. C. (William S. Hodges, of Washington, D. C., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office awarding priority to appellees in an interference proceeding involving a single count. The decision of the board, which was based on the ground that the count does not read on the disclosure of appellant Haugh, reversed the decision of the Examiner of Interferences.

The interference was declared between applications. In view of the only issue in the case, it is not necessary to recite the filing dates, nor is it necessary to detail the preliminary statements.

The subject matter, which relates to a traffic signalling system, is expressed in the count as follows:

"Count 1. In a traffic signalling system for interfering traffic lanes including means for displaying right of way indications, a constantly operating device, controller means driven by the constantly operating device, circuit connections between the said controller and the right of way indicating device, for normally cyclically shifting said right of way indication from one lane to another, means affected by a vehicle approaching the intersection on one lane to temporarily interrupt the normal cyclic display of the said right of way indications and prolong the display of the right of way indication on the said one lane, and a second means operable a predetermined

time thereafter to restore the normal cyclic display of said right of way indications to the said controller."

Haugh is the senior party and the question of his right to make the count was raised by motion to dissolve the interference filed by appellees after order had been made requiring them to show cause why judgment should not be entered against them on the record. The interference, as heard by the Examiner of Interferences, involved other parties and one other count. It is not necessary to recite details respecting the other parties, nor respecting the other count. It is sufficient to say that the sole question here involved is that of Haugh's right to make the count before us.

█ The disagreement between the tribunals of the Patent Office grew out of differences in view as to the proper construction of certain limitations of the count. It may conduce to clearness in understanding the somewhat complicated issues presented if the elements of the count be separately indicated. This is done in the brief on behalf of appellant (the exact language of the count being used and the introductory phrase being stated as an element) as follows:

"1. In a traffic signaling system for interfering traffic lanes including,

"2. means for displaying right-of-way indications,

"3. a constantly operating device.

"4. controller means driven by the constantly operating device,

"5. circuit connections between the said controller and the right-of-way indicating device

"6. for normally cyclically shifting said right-of-way indication from one lane to another

"7. means affected by a vehicle approaching the intersection on one lane to temporarily interrupt the normal cyclic display of the said right-of-way indications and prolong the display of the right-of-way indications on the said one lane,

"8. and a second means operable a predetermined time thereafter to restore the normal cyclic display of said right-of-way indications to the said controller."

As to the first six elements, there is no controversy respecting their disclosure by both applications, and the matter turns on the interpretation of the last two clauses. The decision of the board describes the respective devices, states the view of the Examiner of Interferences, and gives the reasons for its disagreement with such view in the following terms:

"The count is directed to a traffic control system embodying signaling means designed for use at a street intersection and capable of indicating, to traffic in the two intersecting lines, when it is safe to proceed. The signaling systems of both parties involve such a signal arranged as stated. Both parties contemplate alternating the signal display to enable traffic to alternately move along the respective lanes. In accordance with the Stolp and Wagner disclosure, they contemplated prolonging the traffic indication to enable street cars approaching an intersection, at a time when the signal was about to change, to proceed through the intersection. To accomplish this, circuits were provided under the control of the approaching vehicle to interrupt the normal cyclic display and prolong the display along the lane being used by the approaching street car. In order that the right of way along this lane should not be unduly prolonged, timing mechanism was provided, which timing mechanism was set into operation simultaneously with the interruption of the normal cycle to terminate the abnormal display after a predetermined time interval.

"Haugh, like Stolp and Wagner, provided means for alternately displaying signals at an intersection and further means by which the display of a signal along one lane might be prolonged. Haugh also made provision for preventing the signal being prolonged beyond a predetermined time after the original display of the signal rather than after the time that the normal cycle was interrupted.

"In holding the count readable upon the Haugh disclosure, the Examiner of Interferences applies the second means operable a predetermined time thereafter to restore the normal cyclical display of said right of way indication to the said controller as being relays 28 and 29 of the Haugh apparatus, which relays the examiner says: 'operate a predetermined time after the right of way has been given to the corresponding lane to shift the signals.'

"It seems to us that this is not a fair interpretation of the count. While the count did not originate in the Stolp and Wagner application, it appears to have been based on a claim presented by Stolp and Wagner and appearing as claim 25 in Paper No. 5, filed October 8, 1930.

"The count reads aptly on the Stolp and Wagner disclosure in all particulars. In accordance with their disclosure, when an approaching street car closes a circuit at 3E or 3W, a relay system is operated which breaks certain of the circuits leading from the normal controller driven by motor M and transfers the energizing circuit for the green light to a shunt around the controller. Simultaneously with the interruption of the normal cyclic display through breaking of the circuits from the normal controller, a circuit is completed through the timing relay $R_2$ which serves to restore the cyclic display to the controller after the predetermined time recited in the count. This predetermined time obviously starts when the circuit is completed through the relay $R_2$, simultaneously with the energization of the relay $R_4$ and also simultaneously with the interruption of the normal cyclical display.

"In the Haugh disclosure, the maximum time relays 28 and 29 come into operation simultaneously with the change in signal at the street intersection. The change in display may be prolonged but the restoration of the normal cycle bears no definite time relation to the time when said normal cycle was interrupted, as we think the count fairly requires."

As we interpret the foregoing, its meaning is that Haugh does not disclose a "second means" operable at a *predetermined time after* the temporary *interruption* of the normal cyclic display described in clause seven of the count, *supra,* the word "thereafter" (appearing in clause eight) being construed to mean *after* the temporary interruption of the normal cyclic display with a consequent prolongation of such display on one traffic lane, and the "pretermined time" being held to mean the time beginning with the resetting of the normal cyclic operation by the actuation of the instrumentalities which result in interruption and prolongation.

In a second decision accompanying the denial of a petition by appellant for reconsideration, the board pointed out:

"The Stolp and Wagner system only effectively operates when a car approaches the intersection just shortly prior to the time when the signal is about to change from green to red. Under such conditions, after the predetermined period of prolongation has expired, the amber contracts would be engaged and the relay $R_4$ would be short-circuited simultaneously with the completion of the timing interval. It is this operation which in our opinion the count defines. As heretofore pointed out, the Haugh device does not operate in this manner."

While the operation of the respective systems is a matter of much complexity to us, it seems clear that the system disclosed by appellees is one in which the system is fixed for interruption and simultaneous prolongation of the normal cyclic display by actuation of means (engaged by an approaching vehicle) and a resetting of the normal cyclic display by a second means, such resetting to take place at a *predetermined* time after the actuation which results in the interruption and simultaneously begins the prolongation. Also, it seems clear that Haugh does not disclose an arrangement wherein there is a *predetermined* time relationship between the interruption of the normal cyclic display and its restoration.

If, therefore, the construction of the count by the board be correct, its conclusion logically follows. This construction obviously was based largely upon the meaning of the word "thereafter," appearing in the last clause of the count. That meaning sufficiently appears from what already has been said—particularly in what has been quoted from the board's decisions. Unless the word be given the meaning which the board gives it, we are at a loss in attempting to define it.

The construction by the board does not violate the general rule that the counts of an interference should be construed as broadly as their language will reasonably admit. It simply complies with the other part of the rule that clear limitations may not be disregarded. We do not think the board here read limitations into the count. Rather it construed limitations clearly appearing therein.

An addition to the record in this case was made by writ of certiorari issued upon application of appellees and not opposed by appellant. The matter contained therein was a part of the record in the Patent Office and it is thought to have been properly brought into the record before the court. So, the costs of such addition will be assessed against appellant.

The decision of the Board of Appeals is affirmed.

Affirmed.